J. Morgan Philpot (Oregon Bar No. 144811)
Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 975
Salt Lake City, UT 84111
(801) 428-2000
morgan@jmphilpot.com
mrm@mumfordpc.com
*Attorneys for Defendant Ammon Bundy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00051-BR |
|     *Plaintiff,* | |
| v. | MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION RE: ADVERSE POSSESSION |
| AMMON BUNDY, *et al,* | |
|     *Defendants.* | The Honorable Anna J. Brown |

Based on the argument and legal authority presented in the memorandum filed in support of this motion, and Fed. R. Crim. P. 12(b)(2), which allows a party to file "[a] motion that the court lacks jurisdiction … at any time," Defendant Ammon Bundy moves to dismiss the charges pending against him for a lack of federal subject matter jurisdiction. Alternatively, Defendant moves for an advance, preliminary bifurcated trial proceeding beginning on September 7, 2016, solely on the issue of adverse possession.

As a matter of law, this motion is not confined within the limits previously placed by the court on "purely legal motions" due "no later than April 27, 2016" because of the plain language of the rule and the well-established Ninth Circuit and Supreme Court precedent where subject matter jurisdiction was challenged. Any examination of subject matter jurisdiction begins with the basic and fundamental proposition that "federal courts are courts of limited jurisdiction ... empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007). A district court's

jurisdiction cannot be expanded by rule or court discretion. *Id*. at 954. Because subject matter jurisdiction involves the "court's power to hear a case," it "can never be forfeited or waived." and an argument that "a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Id*. at 952; *United States v. Kaluza*, 780 F.3d 647, 653 (5th Cir. 2015) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). When challenged, it is the government's burden to prove jurisdiction, it is not the court's prerogative to presume it. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008).

Further, there is a strong good faith basis for the timing of this motion, under the court's prior order (#994). During the Pretrial Conference on the morning of Tuesday, August 23, 2016, the Court and parties addressed the government's motion *in limine* regarding adverse possession. While it was acknowledged that the adverse possession issue could be raised in front of the jury to establish a lack of criminal "intent" and "willfulness" on Defendants' part, the Court indicated that it would not be giving a jury instruction on the topic and that there would be no trial on the question of whether or not the adverse possession that took place was legal or not.

Upon considering the court's ruling and direction on this issue, counsel for Defendant undertook further research, which indicated that the Court was mistaken in its ruling, but more importantly why – i.e., it is now apparent that the Court should be precluded from proceeding to trial based on a lack of subject matter jurisdiction due to Congress's express action (by both rule and statute) protecting adverse possession and excluding the same from the court's criminal jurisdiction under 18 U.S.C. § 3231. Alternatively, the authority presented in support of this motion demonstrates that, if there is any factual question as to whether the defendant's conduct

constituted adverse possession, this issue must be resolved first as a legal question.[1] *See, e.g.,*
*United States v. Otley*, 127 F.2d 988 (9th Cir. 1942). In *Otley*, the Ninth Circuit rejected the
argument being advocated by the government in this case – that any claim for adverse possession
against the United States is "ineffective" – and reversed the district court's judgment that
"adverse claimants 'held no property rights or rights of any nature to the land in Malheur
Division against the United States or any patentee'" based on its conclusion that "adverse
claimants are entitled to have their title quieted against both" patentees *and* the United States. *Id.*
at 1001.

      Certificate of Conferral:  Defense counsel for Mr. Bundy conferred with attorneys for the
United States in advance of filing this motion to dismiss for lack of subject matter jurisdiction,
and the United States stated its intent to oppose the motion.

      DATED:  August 30, 2016

                    */s/ Marcus R. Mumford*
                    Marcus R. Mumford
                    J. Morgan Philpot
                    Attorneys for Ammon Bundy

---

[1] If the question is answered in the affirmative, then a lawful adverse possession cannot also be
unlawful impedance (as argued below) and dismissal is required for lack of subject matter
jurisdiction. If the actions of the Defendants in January 2016 does not legally constitute adverse
possession, then the court may have subject matter jurisdiction to proceed, but the court's
instruction as to intent and willfulness is relevant, because whether or not Mr. Bundy was
correct, his "intention" as to whether he thought he was exercising adverse possession or whether
he thought he was acting to impede, is a jury question. *See United States v. Makhlouta,* 790 F.2d
1400, 1405 (9th Cir. 1986); *United States v. Noah*, 475 F.2d 688, 697 (9th Cir. 1973) (explaining
that it is "reversible error not to instruct as to defendants' theory of the case if the record contains
evidentiary support for the theory and the theory is supported by law"); *United States, ex rel.*
*Means v. Solem*, 646 F.2d 322, 328 (8th Cir. 1980) ("It is well established that a defendant in a
criminal case is entitled to an instruction on his theory of the case.").

J. Morgan Philpot (Oregon Bar No. 144811)
Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 975
Salt Lake City, UT 84111
(801) 428-2000
morgan@jmphilpot.com
mrm@mumfordpc.com
*Attorneys for Defendant Ammon Bundy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:16-cr-00051-BR |
|     *Plaintiff,* | |
| v. | MEMORANDUM IN SUPPORT OF DEFENDANT AMMON BUNDY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION RE: ADVERSE POSSESSION |
| AMMON BUNDY, *et al,* | |
|     *Defendants*. | The Honorable Anna J. Brown |

The government is prosecuting Mr. Bundy and his co-defendants for the alleged "conspiracy" involving their political protest and occupation of the Malhuer National Wildlife Refuge (the "Refuge") in January 2016. According to the government's theory, the defendants acted with the intention to "prevent by force, intimidation, and threats" federal officials from discharging their duties. While they disagree as to the aim and intentions at issue, Mr. Bundy and the government agree that he and others ejected the federal government from its possession of the Refuge on January 2, 2016, and that the government took no action to reclaim possession of the Refuge until after Mr. Bundy's arrest on January 26, 2016. These factors alone, by express provisions of Congress and longstanding principles of common law, confirms that Defendants' actions legally changed the character of the Refuge land and property so as to deprive this Court of subject matter jurisdiction over the alleged crimes and charges now pending.

**APPLYING THE COURT'S PRIOR ORDER**

This motion is based, in part, on conclusions made in the Court's prior order, entered

June 3, 2016, denying, *inter alia*, Defendants' motion to dismiss based on arguments made applying the Enclave and Property Clauses of the U.S. Constitution, Art. I, § 8, cl. 17 and Art. IV, § 3, cl. 2. [Doc. 649 at 11] Specifically, the Court recognized that Congress may administer "'federal lands any way it chooses,'" and that the government's "exercise of regulatory jurisdiction over the MNWR is authorized by the Property Clause, and, therefore, this Court has jurisdiction over the charged offenses that allegedly took place on the MNWR." [Doc. 649 at 12-13, 15 (quoting *United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997)]

Extending that same logic, the Court must recognize that Congress expressly limited the government's power over federal land, when it authorized Mr. Bundy and "[a]ny individual, group, or corporation authorized to hold title to land … and who believes he has a valid claim under color of title" to attempt a claim for adverse possession against federally-owned land under the Color of Title Act. *See* 43 U.S.C. § 1068; 43 CFR 2541.1. Cases examining the doctrine of adverse possession recognize that, as soon as Defendants effectuated an "ouster" of the government, their "naked possession" in the land – even if "acquired by wrong, as by disseisin," constituted "a title" to that property, which would continue "'till some act be done by the rightful owner to devest the possession.'" *Robinson v. Campbell*, 16 U.S. 212, 224 (1818) (quoting 2 Blackstone Commentaries on the Laws of England 196). Because the government did not make any effort to "devest" or "divest" Defendants' possession of the Refuge lands and property until after it arrested Mr. Bundy on January 26, 2016, the Defendants' possessory "title" continued throughout the entirety of the occupation so that, based on the government's own allegations, the alleged crimes were not committed on federal land or against federal. The Ninth Circuit long ago concluded that **it is reversible error for the trial court to acquiesce to the government's position** on this issue. In *Otley*, the government argued that adverse claimants had no legal rights

by claiming unperfected adverse possession of federal lands in and around the Malheur lake

because "the adverse holding was directed against plaintiff, the United States, against which

adverse possession is ineffective." *Otley*, 127 F.2d at 1001. But the Ninth Circuit flatly rejected

that argument, concluding that the district court had "erred in making no finding with regard to

the character of the adverse possession." *Id.*[2]

## SUMMARY OF RELEVANT FACTUAL ALLEGATIONS

To establish the necessary elements of its "conspiracy" charge, the government alleges

that Mr. Bundy led Defendants to adversely possess the Refuge on January 2, 2016:

> By Monday morning, [January 4, 2016,] Bundy and his men had settled into the
> Refuge for a period that Bundy predicted would last "several years." Out of
> concern for their safety, the seventeen employees who worked at the Refuge were
> ordered to stay home…. and no regular, official work was conducted at the
> Refuge throughout the course of defendants' siege.

[Doc. 958 at 7-8] Mr. Bundy's alleged "threats" were admittedly defensive and directly in line

with the plain common law elements of adverse possession:[3]

> Bundy told a national morning news show that members of CCF were armed
> because: "We are serious about being here. We're serious about defending our
> rights, and we are serious about getting some things straightened out." When
> asked on the show if he anticipated it would lead to violence, Bundy responded,
> "Only if the government wants to take it there."

[*Id*. at 8] The government admits that Mr. Bundy "was unwavering in his position regarding the

takeover of the Refuge," establishing what the law recognizes as an "ouster" or *disseisin*:

> In an effort to fortify their hold on the Refuge, defendants also set up military
> style teams to enforce security. They placed armed guards in a tower on the
> property, armed guards at the front and rear gates, and had armed teams patrolling
> different parts of the Refuge. In the end, they collectively did their best to live up

---

[2] In *Otley*, the Color of Title Act was not directly at issue, and the mandatory provisions of the
Act were not made law until 1953, *see Day v. Hickel*, 481 F.2d 473 (9th Cir. 1973). But the
Ninth Circuit made clear that the "adverse claimants [were] entitled to have their title quieted
against both" private land owners *and* the United States. *Otley*, 127 F.2d at 1001.
[3] *See Jackson ex dem. Bradstreet v. Huntington*, 30 U.S. 402, 438-39 (1831) (staking a claim for
adverse possession is "an act of force" to which a "variety of legal rights and incidents" attach).

to the words uttered by Ammon Bundy on January 4th when asked about his plans for the Refuge: "[S]tatements are not good enough … we have a lot of work to be able to unwind the unconstitutional land transactions that have taken place here."
….
On January 13, 2016, Bundy announced that the occupiers had changed the name of the Refuge to the "Harney County Resource Center" and that the group was "working through records" located at the Refuge. He told negotiators that the group had no plans to leave, and until his arrest, did nothing to suggest otherwise.

[*Id.* at 3, 8]

## ARGUMENT

## I.    The Government Must Establish The Court's Subject Matter Jurisdiction.

The government bears the burden to prove federal subject matter jurisdiction. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). It will often satisfy this with a reference to the applicable jurisdictional statute. *See De La Maza v. United States*, 215 F.2d 138, 140 (9th Cir. 1954) ("[A]fter an offense under the laws of the United States was set forth and returned in the indictment, the district court had jurisdiction."). But where certain factual allegations are not disputed, courts will "'examine the factual predicate'" of the government's claims to ensure federal subject matter jurisdiction. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citation omitted); *see also Loughrin v. United States*, 134 S. Ct. 2384, 2392 (2014) ("'[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction.'"); *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013) (holding that FDIC insurance was "not only an essential element" of bank fraud but "also necessary for … federal jurisdiction"). In *United States v. Ali*, 266 F.3d 1242 (9th Cir. 2001), the Ninth Circuit recognized that the government must prove certain issues as both "a jurisdictional prerequisite" and "an element of the substantive crime." *Id.* at 1243 (citing *United States v. Key*, 76 F.3d 350, 353 (11th Cir. 1996)); *see also* attached Exhibit 1.

## II.    Defendants' Occupation Constituted A Legal "Ouster" Of The Government.

Here, the government is prosecuting Mr. Bundy and others for conspiracy to impede federal officials from discharging their duties grounds that the defendants "had no business being on [the Refuge] in the first instance." (7/18/2016 Hrg. 20:1-17) But Mr. Bundy was, admittedly, "unwavering" in defending his actions and refusing to leave the Refuge, claiming a constitutional right and good faith belief supporting the occupation. [Doc. 958 at 3-8] Applying Supreme Court precedent, Mr. Bundy's actions, and the related acts of his fellow protestors, constituted a legal "ouster" of the federal government from the Refuge. *Ewing's Lessee v. Burnet*, 36 U.S. 41, 52 (1837) (affirming adverse possession where one enters the land of another "under claim and color of right [thus constituting] an ouster"); *see also Probst v. Trustees of Bd. of Domestic Missions*, 129 U.S. 182, 190 (1889) (summarizing: "'A disseisin is when one enters intending to usurp the possession and to oust another of his freehold.'"); *Springer v. Young*, 12 P. 400, 403 (Ore. 1886) ("[A]dverse possession cannot begin until there has been a disseizin …."). In *Probst*, the Supreme Court explained how adverse possession "does not depend upon, and has no necessary connection with, the validity of the claim under which that possession is held." 129 U.S. at 190. Key to the appropriate analysis is whether the disseisor acted with "claim of right" or "color of title," meaning the intent "to appropriate and use the land as his own to the exclusion of all others.'" *Guar. Title & Trust Corp. v. United States*, 264 U.S. 200, 204-05 (1924). In this case, Mr. Bundy and others ousted the government from the Refuge on January 2. In response, the government did not take any steps to recover its possession. Accordingly, the "general rule" recognized by the Supreme Court in *Robinson* applied to give Mr. Bundy and other Defendants the right and title to the Refuge until the government brought a civil action to eject them:

> [P]ossession constitutes a sufficient title against every person not having a better title …. [and] "he that hath possession of lands, though it be by disseisin, hath a right against allmen but against him that hath right[,]" and the rule of the civil law

> is the same. … [P]ossession, although it be merely a naked possession, or
> acquired by wrong, as by disseisin, is also a title upon which a recovery can be
> had. For as Blackstone justly observes, "in the mean time, till some act be done by
> the rightful owner to devest the possession and assert his title, such actual
> possession is prima facie evidence of a legal title in the possession; and it may, by
> length of time … by degrees ripen into a perfect and indefeasible title."

*Robinson*, 16 U.S. at 224 n.6 (quoting, *inter alia*, 2 Blackstone Commentaries on the Laws of

England 196). Because the government did not bring a civil ejectment action against Defendants,

the Court cannot assume – let alone conclude – that the "title" Defendants obtained by way of

their "ouster" ever formally reverted to the government. In *Wright v. Mattison*, 59 U.S. 50, 59-60

(1855), the Supreme Court reversed where the trial court made unwarranted assumptions about a

lack of good faith on the part of a party asserting a claim of adverse possession. *See also Green*

*v. Biddle*, 21 U.S. 1, 75 (1823) (recognizing a right "to recover … possession by suit"). And, in a

civil context, the Ninth Circuit has already ruled that adverse possession is a valid legal claim,

even in circumstances where "the United States is the owner of the land" that is subject to a

claim for adverse possession. *Otley*, 127 F.2d at 1001.

In bringing this motion to force the Court to confront the significance of Defendants'

"ouster" of the government, Mr. Bundy is relying on the same principles of property law –

"possession … under color and claim of title" – that the federal government relied on to quiet

title in the Refuge in the first place. The Court will recall how, in its June 3 Order, Doc. 649 at

12-13, it cited *United States v. Oregon* as quieting title of the Refuge in the federal government:

> This possession of the United States, under color and claim of title, is not shown
> to have been disputed or interfered with. As it is sufficient to preclude any action
> at law in the nature of ejectment, it is an adequate basis for relief in equity to
> remove the cloud created by the assertion of any inferior title of the state.

*United States v. Oregon*, 295 U.S. 1, 25 (1935). Having established title in the Refuge, in part,

based on its possession under color of title, the government can hardly complain that Defendants

availed themselves of the same property law principles to oust the government on January 2,

resulting in a title of the Refuge land and property vesting with Defendants, at least until the government took "some act … to divest the[m of] possession.'" *Robinson*, 16 U.S. at 224.

Stated differently, the actions of Mr. Bundy and his fellow Defendants were authorized by Congress via the Color of Title Act, its related rules, and court decisions interpreting these provisions consistent with common law adverse possession principles. Because the government, after being ousted, did not take any action to divest Defendants of the right and title they obtained by way of their *disseisin*, this Court does not have federal subject matter jurisdiction. *See id*; *Standage Ventures, Inc. v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974) ("Such a palpably insubstantial claim will not support federal jurisdiction."); *see also Pillow v. Roberts*, 54 U.S. 472, 477 (1851) (recognizing that an adverse possessor need not have "any title but possession" because "[a] wrongful possession, obtained by a forcible ouster of the lawful owner, will amount to a *disseisin*, and the statute will protect the disseizor"); *Huntington*, 30 U.S. at 436 (recognizing that the deed of a party "disseised of his freehold" is "utterly void" until he takes action to recover possession); *United States v. Florea*, 68 F. Supp. 367, 375 (D. Or. 1945) (recognizing that appurtenant rights pass to any possessor of land, "including a wrongful taker, holder, or even disseisor").[4] Following the January 2 *disseisin*, the Refuge also lost – at least temporarily – its status as a "federal facility." *See, e.g., United States ex rel. Bowen v. Johnston*, 58 F. Supp. 208, 209 (N.D. Cal. 1944) (recognizing that without further act of a state legislature ceding criminal jurisdiction, the federal government "would have lacked power to prosecute criminally"); *United States v. Lewis*, 36 F. 449, 450 (D. Or. 1888) ("It is long since settled that the courts of the United States have no common-law jurisdiction in criminal cases….").

---

[4] These property doctrines apply in several contexts. *See, e.g., Union Oil Co. v. Smith*, 249 U.S. 337, 347-48 (1919) (recognizing a "right to maintain possession" of a mining claim "against violent, fraudulent, and surreptitious intrusions" before that right is perfected).

**III.    By Enacting 43 U.S.C. § 1068, As Supplemented By 43 C.F.R. 2541, Congress Divested This Court Of Criminal Jurisdiction For Charges Involving Adverse Possession.**

As further grounds for dismissal, the Court should recognize that citizens are protected by federal law in asserting adverse possession claims *against the government* without being criminally prosecuted. First, there is no federal crime of adverse possession. Nor should there be. To the contrary, Congress has enacted laws, supplemented by executive rules, expressly protecting those who assert adverse possession claims, including by way of the Color of Title Act, which created a "vested right in the land" in favor of the settler initiating a disseisin. *Day*, 481 F.2d at 476 (quoting legislative history). While the law recognizes that adverse possession is itself "an act of force" to which a "variety of legal rights and incidents" attach, *Huntington*, 30 U.S. at 430, courts make a distinction between legitimate and illegitimate force in that respect, for example, requiring that parties use civil proceedings to resolve adverse possession claims – noting that the Color of Title Act stands in contrast to the brute force that would result if citizens had to "resort[] to the aboriginal expedient" by "physical combat":

> If adverse possession by meeting the statute's requirements could be proved only as a 'defense', the parties would be remitted to physical combat with the stronger remaining in possession of the disputed land …. We think Congress did not mean to have one law adverse possession for a defendant in ejectment and another for all other parties and actions.

*Faulks v. Schrider*, 114 F.2d 587, 590 (D.C. Cir. 1940).

The Court's June 3 Order concluded that Congress can regulate lands "any way" it chooses, and that the "Constitution provides Congress with the power 'to dispose of and make all needful Rules and Regulations" pertaining to the public lands. [Doc. 649 at 12-13] As it relates to the Court' subject matter jurisdiction – this holding is determinative. *See United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (judiciary "may not expand or diminish the jurisdiction conferred by Congress"). In the present circumstances, the court is confronted by the

fact that Congress provided, by statute supplemented by executive rule, that "any individual" with the power to hold title may initiate an adverse possession claim against the government, which includes the implicit "act of force" required by all common law adverse possession *dissiesens* and *ousters.* This is *explicitly lawful* conduct to which Congress has attached "a variety of legal rights and incidents." *Huntington,* 30 U.S. at 430; *see also Lamar v. United States*, 240 U.S. 60, 64-65 (1916) ("when the controversy concerns a subject limited by federal law" then it is jurisdictional, *e.g.*, bankruptcy, copyright, patents, admiralty, etc.). Thus, what Congress has made legal "force" cannot also be an illegal "force" under federal or state law, *e.g.* 18 U.S.C. § 372. It would be an extreme contravention of legal principles to allow, on the one hand, the United States to construe a controversy involving "use of force" under adverse possession as a criminal act, or, on the other hand, to permit the United States to pursue such a claim where these principles have divested the court of jurisdiction – as sanctioned by Congressional actions. *See, e.g., McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1145 (9th Cir. 2007). And, while Congress long ago criminalized unlawful conspiracies designed to employ "force, intimidation, or threat" for the purpose of impeding "any officer of the United States" under 18 U.S.C. § 372, in a more specific and modern statute, Congress has expressly protected and condoned "[a]ny individual, group or corporation authorized to hold title to land in the State and who believes he has a valid claim under color of title" and who has employed the ubiquitous "force" and "ouster" requirements of adverse possession.[5] "When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its "importance." *Digital Equip. Corp.*

---

[5] Congress "need not use magic words" to make a jurisdictional rule; all that is required is a " 'clear' indication that Congress wanted the rule to be 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011).

*v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994). Jurisdictionally, the alleged force involved in this case cannot be both legally required by the Congress – and a prohibited federal crime. *See Bulova Watch Co. v. United States*, 365 U.S. 753, 757 (1961) ("It is equally settled law that if a specific statutory provision conflicts with a general one, the specific statute governs."); *United States v. Porter,* 745 F.3d 1035, 1049 (10th Cir. 2014) (holding that canons of statutory construction require that when a general and specific statute conflict, the application of the more general statute "is suspended" and the more specific statute must govern); *In re Gledhill*, 76 F.3d 1070, 1078 (10th Cir. 1996)("[A] court should not construe a general statute to eviscerate a statute of specific effect."); *United States v. Revis*, 22 F. Supp. 2d 1242, 1251 (N.D. Okla. 1998) (explaining in the context of limits on the federal government, that where one law "specifically grants … authority to engage in" certain conduct, a conflicting "general prohibition" must give way). "'Regard is always to be had to the familiar rule that one may not be punished for crime against the United States unless the facts shown plainly and unmistakably constitute an offense within the meaning of an act of Congress.'" *Norton v. United States*, 92 F.2d 753, 756 (9th Cir. 1937) (quoting *Donnelley v. United States*, 276 U.S. 505, 511 (1928))

DATED:  August 22, 2016

> */s/ Marcus R. Mumford*
> Marcus R. Mumford
> J. Morgan Philpot
> Attorneys for Ammon Bundy