BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**ETHAN D. KNIGHT, OSB #992984**
**GEOFFREY A. BARROW**
**CRAIG J. GABRIEL, OSB #012571**
Assistant United States Attorneys
ethan.knight@usdoj.gov
geoffrey.barrow@usdoj.gov
craig.gabriel@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:16-CR-00051-BR |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANTS' MEMORANDUM REGARDING APPLICATION OF *STRICTISSIMI JURIS* (#1145)** |
| **AMMON BUNDY, et al.,** | |
| Defendants. | |

The United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and through Ethan D. Knight, Geoffrey A. Barrow, and Craig J. Gabriel, Assistant United States Attorneys, hereby responds to defendants' Memorandum Regarding Application of *Strictissimi Juris* and Request to Reconsider Admissibility of Coconspirator Statements (ECF No. 1145), filed by defendant Santilli on behalf of all defendants.

*Strictissimi juris* is a doctrine that the Supreme Court has recognized applies when it is called upon to review whether there is sufficient evidence to sustain a conviction for a crime that involves membership in an organization that advocates both lawful and unlawful objectives. For example, convictions obtained under the Smith Act against members of the Communist Party who were prosecuted for that membership in the late 1950s and early 1960s could not be sustained because the government failed to prove that specific defendants participated in a conspiracy to teach people to take concerted action toward the violent overthrow of the existing government as soon as possible. *United States v. Yates*, 354 U.S. 298, 320-25 (1957). Mere membership in the Communist Party, which had legitimate aims (including teaching "classic" Marxism-Leninism), was not a crime. *United States v. Scales*, 367 U.S. 203, 232-33 (1961). As a consequence, the Court employed "*strictissimi juris*," that is, a careful and searching review, to determine if a particular defendant sought to achieve the group's unlawful objectives; there must be "some substantial direct or circumstantial evidence of a call to violence now or in the future which is both sufficiently strong and sufficiently pervasive to lend color to the otherwise ambiguous theoretical material regarding Community Party teaching, and to justify the inference that such a call to violence may fairly be imputed to the Party as a whole, not merely to some narrow segment of it." *United States v. Noto*, 367 U.S. 290, 297-98 (1961).

The Ninth Circuit has, to the government's knowledge, only cited the *strictissimi juris* doctrine once, and it did so in a Smith Act membership case that was also brought against a Communist Party member. *Hellman v. United States*, 298 F.2d 810 (9th Cir. 1961). Applying *Scales* and *Noto* and the *strictissimi juris* standard of review in analyzing a challenge to the

sufficiency of the evidence, the court concluded that the government's evidence was insufficient to sustain the conviction because there was no evidence that Hellman "had the specific intent to bring about the violent overthrow of the government." *Id.* at 812-14.

Other courts have similarly applied *strictissimi juris* to sufficiency challenges on direct appeal when the charges involved a defendant's membership in a group that had both legal and illegal purposes. The Seventh Circuit applied the doctrine to defendants prosecuted under federal anti-riot statutes following the 1968 Democratic National Convention because the group activity giving rise to the charges involved a "bifarious undertaking involving both legal and illegal purposes." *United States v. Dellinger*, 472 F.2d 340, 392 (7th Cir. 1972). Although the court reversed the convictions based upon what it deemed an inadequate voir dire, it found sufficient evidence to sustain the charges should the jury convict following a retrial. *Id.* at 398, 400, 402, 405, 407.

The First Circuit likewise applied the doctrine to convictions that followed a Vietnam war protest in which several defendants were charged with conspiring to "counsel, aid, and abet" draft resistance. *United States v. Spock*, 416 F.2d 165, 168 (1st Cir. 1969). Because the charges were leveled against a group effort that involved lawful means and objectives (oral and written opposition to the United States' involvement in the war) and unlawful means and objectives (counseling others to avoid draft requirements), the court employed a searching review of the evidence to determine whether there was sufficient proof that the defendants specifically intended to promote the group's unlawful endeavors. *Id.* at 173. The court listed three ways in which the government might show that specific intent, all of which focused on the

statements and acts of a particular defendant. *Id.* Although the court criticized the government's reliance upon coconspirator statements, suggesting that the position was at odds with the *strictissimi juris* doctrine, it specifically declined to reach the question of whether the admission of that evidence constituted prejudicial error. *Id.* at 174. Instead, the court held that the evidence was generally insufficient because it failed to show that several individual defendants actually "adhered to" the group's illegal objectives. *Id.* at 174, 178-79.

Consequently, courts recognize the *strictissimi juris* doctrine as a tool designed to ensure that a defendant charged with membership in an organization is not convicted merely based on his membership; that is, that there is sufficient evidence to support the imposition of criminal liability because a defendant intended to bring about the group's unlawful objectives.[1] Courts have recognized the doctrine's limited application, however, holding that it has no bearing on criminal charges directed against group activity that involves exclusively illegal means to obtain an illegal objective.

In a case most factually analogous to this one, a Native American activist who opposed state police activity on Reservation lands organized a group to blockade several businesses thereby thwarting state and federal law enforcement's efforts to execute search and arrest

---

[1] In *Stone*, the trial court granted post-trial Rule 29 motions; the court cited *Dellinger*, but never specifically invoked the *strictissimi juris* doctrine. The court ultimately held that the government failed to prove that the defendants actually conspired to commit any "concrete" unlawful acts; at best, the court described the proof as "vague, anti-government hate speech," which was insufficient to sustain a charge that defendants had conspired to use a weapon of mass destruction. *United States v. Stone*, No. 10–20123, 2012 WL 1034937 (E.D. Mich. Mar. 27, 2012). If the doctrine applies in the trial court setting at all (a point the government disputes in this case), it would be limited to consideration of Rule 29 motions, which are closely akin to sufficiency challenges on appeal.

**Government's Response to Defendants' Memorandum Regarding Application**   **Page 4**
**of *Strictissimi Juris* (#1145)**

warrants. *United States v. Montour*, 944 F.2d 1019 (2d Cir. 1991). When he was charged with conspiracy to impede law enforcement, he urged the court to employ *strictissimi juris* when reviewing his challenge to the sufficiency of the evidence because, he argued, his motivations were grounded in the First Amendment. The court rejected that argument, explaining that the existence of "political overtones" did not, standing alone, justify invocation of the doctrine. *Id.* at 1024. "Courts use *strictissimi juris* only under very special circumstances" the court explained, and "this appeal does not involve such a situation." *Id.* Instead, because the charges leveled against defendant targeted only his illegal ends (forcibly impeding law enforcement search and arrest warrants) and only his illegal means (blockading the businesses), traditional review standards were appropriate. *Id. See also United States v. Cerilli*, 603 F.2d 415, 422 (3d Cir. 1979) (rejecting *strictissimi juris* doctrine in a Hobbs Act political extortion case).

Like the charges in *Montour*, the conspiracy charge in this case does not involve lawful First Amendment activity. Defendant's First Amendment views are relevant evidence of their motives to commit illegal acts, but it is only their illegal objective (impeding Refuge employees from doing their jobs) and their illegal means (forcibly seizing the Refuge offices) that form the basis for the conspiracy charge. Defendants are not charged with protesting the Hammonds' prosecution or sentencing or holding generally anti-government views. This is not, therefore, a case in which the government seeks to impose criminal liability based upon mere membership in a group that involves "bifarious" undertakings. As a consequence, *strictissimi juris* has no bearing on this case.

Even if the doctrine were to apply to this case and these charges, no court has held that it applies as expansively as these defendants suggest. Defendants have asked this Court to use the doctrine to modify the Federal Rules of Evidence and the jury instructions explaining how the jury should consider the evidence in this case. That expansion of *strictissimi juris* is unprecedented.

Lacking case support for their arguments that *strictissimi juris* should alter this Court's rulings on the admissibility of coconspirator statements, defendant's sole support for this notion is a law review article. The article describes the law as the Associate Professor and active member of the National Association of Criminal Defense Attorneys would like the law to be; it is aspirational, not precedential.[2] Indeed, only one court has considered the argument that the doctrine should modify the Federal Rules of Evidence and that court squarely rejected it. *United States v. Stone*, 848 F. Supp. 2d 719, 724 (E.D. Mich. 2012). This Court should likewise reject the defense's effort to trump the Federal Rules of Evidence. The rules, as written, and when considered in conjunction with this Court's jury instructions, should suffice to ensure that no defendant is convicted based solely upon his association with others who engaged in illegal activities.

The government anticipates that this Court will instruct the jury that it must consider the case against each defendant separately and that its verdict as to one defendant should not control

---

[2]  According to the UND Law School website, Mr. Morrison has been a practicing criminal defense attorney since 2008; he has also been a particularly active member of the NACDL. He has authored numerous articles on the *strictissimi juris* doctrine and is a popular lecturer on the subject; although his CV claims that his work has been cited in several Supreme Court briefs, his work has not (to date) been cited in any court opinions. http://law.und.edu/faculty/profile/morrison.cfm.

**Government's Response to Defendants' Memorandum Regarding Application**     **Page 6**
**of *Strictissimi Juris* (#1145)**

its verdict as to any other defendant. Moreover, to sustain any conviction, the government will have to prove beyond a reasonable doubt that each defendant knowingly and willfully joined the charged conspiracy with the aim of accomplishing its illegal objective; that is, to impede federal officials from performing their jobs at the Refuge. The jury may properly consider coconspirator statements under Fed. R. Evid. 801(d)(1)(E) to the extent they find that the statements were made during the course of and in furtherance of the conspiracy and to the extent they may shed any light on a particular defendant's intent. *See generally United States v. Martinez de Ortiz*, 907 F.2d 629, 632-35 (7th Cir. 1990) (en banc); *United States v. Orque*, No. 10–510 (JBS), 2015 WL 566987, *14-15 (D.N.J. Feb. 9, 2015); Model 3d Cir. JI 6.18.371K; Model 8th Cir. JI 5.06D.

For all of these reasons, defendant Santilli's request that this Court reconsider the admissibility of coconspirator statements applying *strictissimi juris* (ECF No. 1145) should be denied.

Dated this 31st day of August 2016.

                                                Respectfully submitted,

                                                BILLY J. WILLIAMS
                                                United States Attorney

                                                *s/ Ethan D. Knight*
                                                ETHAN D. KNIGHT, OSB #992984
                                                GEOFFREY A. BARROW
                                                CRAIG J. GABRIEL, OSB #012571
                                                Assistant United States Attorneys