J. Morgan Philpot (Oregon Bar No. 144811)
Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 975
Salt Lake City, UT 84111
(801) 428-2000
morgan@jmphilpot.com
mrm@mumfordpc.com
*Attorneys for Defendant Ammon Bundy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff*, <br> v. <br> AMMON BUNDY, *et al*, <br>     *Defendants*. | Case No. 3:16-cr-00051-BR <br><br> EMERGENCY MOTION TO ENJOIN PROSECUTION, DISMISS WITH PREJUDICE, AND OTHER RELIEF <br><br> The Honorable Anna J. Brown |

    The Court is familiar with the issues raised concerning federal subject matter jurisdiction and adverse possession. [#649, #1228] At last Friday's hearing, the Court said to undersigned counsel, somewhat exasperatedly: "You don't give up, do you?" It was a moment of levity at the end of a trying week, and counsel did not conclude anything further from it. But counsel did not realize that, just a few hours earlier, the government filed documents purportedly supporting a request for judicial notice regarding ownership of the Malhuer National Wildlife Refuge ("Refuge"). [#1229, #1230] Those documents, filed at almost **the last moment** before Defendant Ammon Bundy is to stand trial, raise several urgent legal issues, contradicting and disproving the government's prior statements regarding subject matter jurisdiction, and necessitating the relief sought herein. The declaration also helps demonstrate how the evidence that the government intends to introduce at trial was seized without due process, raising significant issues which must be resolved before any trial on the underlying charges. For the reasons asserted, Mr. Bundy moves to immediately enjoin the government's prosecution, to dismiss this matter with prejudice, to restore Mr. Bundy and the Citizens for Constitutional Freedom to the land and

property they possessed prior to the government's unlawful actions dispossessing them of that land and property, to suppress all evidence obtained by the government from the occupation site after Mr. Bundy was arrested on January 26, 2016, and for the other relief set forth below.

This motion is brought pursuant to Fed. R. Crim. P. 12(b)(2), and the other authority set forth below, the attached declaration of Dr. Angus McIntosh, and the Ninth Circuit's recent decision in *United States v. McIntosh*, 2016 WL 4363168, at *8 (9th Cir. Aug. 16, 2016), which upheld a defendant's right to challenge – prior to trial – criminal prosecution on separation of powers and/or federalism principles, including by injunction, when the executive branch is acting in direct violation of an express and clear restriction passed by Congressional legislation.

The timing of this motion is based on good cause, as the government only disclosed this information on September 9, 2016, notwithstanding the importance of the issue from the outset of this case, to say nothing of Defendant's repeated challenges to the issue of jurisdiction and ownership, and the Court's prior rulings, which as it turns out were in error due, at least in part, to the government's failure to provide the information previously.[1] As trial is set for tomorrow morning, Defendant seeks this Court's immediate attention and, if necessary, an order staying the commencement of trial proceedings in order to address and resolve this matter appropriately.

CERTIFICATE OF CONFERRAL

When Mr. Bundy's counsel raised these issues with the government, it indicated that it intends to oppose this motion. Dated this 12th day of September, 2016.

> */s/ Marcus R. Mumford*
> Marcus R. Mumford
> J. Morgan Philpot
> Attorneys for Ammon Bundy

---

[1] That "a federal court lacks subject-matter jurisdiction may be raised by a party … at any stage in the litigation." United States v. Jacobo Castillo, 496 F.3d 947, 952 (9th Cir. 2007).

*Emergency Motion To Enjoin Prosecution, Dismiss With Prejudice, And Other Relief*   -2-

J. Morgan Philpot (Oregon Bar No. 144811)
Marcus R. Mumford (admitted *pro hac vice*)
405 South Main, Suite 975
Salt Lake City, UT 84111
(801) 428-2000
morgan@jmphilpot.com
mrm@mumfordpc.com
*Attorneys for Defendant Ammon Bundy*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. AMMON BUNDY, *et al*, *Defendants*. | Case No. 3:16-cr-00051-BR<br><br>MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO ENJOIN PROSECUTION, DISMISS WITH PREJUDICE. AND OTHER RELIEF<br><br>The Honorable Anna J. Brown |

The declaration filed by the government on Friday, September 9, 2016, states that it (1) purchased the Refuge headquarters property "from the Eastern Oregon Land and Livestock Company," title passing "via an instrument recorded February 21, 1935" ("Parcel 1"); and (2) purchased the property immediately north of headquarters from "Paul C. and Ruth Stewart," title passing via warranty deed "November 27, 1940" ("Parcel 2"). [#1230 at 2] Among other things, this information is contrary to the assumptions the Court made in its June 3, 2016 Order denying Mr. Bundy's first jurisdictional motion for purportedly failing to show that "the United States ever relinquished title to the MNWR or that the MNWR was ever owned by any other entity." [#649 at 12] At that time, the Court assumed that the entire Refuge was "part of the public domain" when Oregon was admitted to the Union, and that "[n]o part of it has ever been disposed of, in terms, by any grant of the United States," concluding that "[b]ecause there is not any evidence in the record that the United States ever relinquished title to the lands that comprise the MNWR, the Court concludes the Property Clause grants the United States regulatory

jurisdiction over the MNWR." [Id. at 12, 14 (quoting *United States v. State of Oregon*, 295 U.S. 1, 6 (1935)] To summarize: the Court denied Defendant's first jurisdictional motion because, if it was undisputed that the federal government *owned* the land, there could be no dispute that it could exercise its power over it, and, therefore, "this Court has jurisdiction over the charged offenses that allegedly took place on the MNWR." [Doc. 649 at 12-13, 15 (quoting *United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997)]

Implicit in the Court's June 3 Order was the fact that a different conclusion may be warranted if Congress had (1) ever relinquished title to the property making up the Refuge, or (2) ever relinquished its regulatory jurisdiction over the Refuge. And whatever the reason for delay, that is exactly what the government's declaration now shows. First, it contradicts the Court's earlier assumption that the property at issue had never "been disposed of, in terms, by any grant of the United States." [#649 at 12 (quoting *State of Oregon*, 295 U.S. at 6)] It also contradicts the government's trial brief, filed July 29, 2016, which characterized the entire 187,000+ acres of the Refuge as having been "[e]stablished by" President Roosevelt in 1908. [#958 at 10]

The government's declaration now makes clear that the land where the Refuge headquarters is located was **never** part of the 1908 set aside discussed in *State of Oregon*. [Compare #649 at 12-14 with #1230 at 2] The fact that the government was able to reacquire Parcels 1 and 2 in February 1935 and November 1940, confirms the Court's error of relying on *State of Oregon* to deny Mr. Bundy's first motion. [#649 at 14-15] As explained in that case, and confirmed by the government's declaration, the 1908 portion of the Refuge was only 81,786 acres, as opposed to its current area total of more than 187,000 acres. *State of Oregon*, 295 U.S. at 5. Accordingly, contrary to what this Court suggested in its June 3 Order, the court's *State of Oregon* ruling did not "quiet[] title" to the land at issue in this case. [#649 at 13] With the benefit

of hindsight, one can see how the government knew that the Court had erred on this point but did nothing about it: its opposition to Mr. Bundy's first jurisdictional motion included a footnote noting that "[t]he land where the [Refuge] headquarters are located … was acquired in 1935 pursuant to … 48 Stat. 22 (1933)." [#570 at 4 n.2] And yet, the government waited until the very **eve of trial** to provide any further information on this very contested point.

This new information regarding Parcels 1 and 2 also contradicts the assumptions that the Court made in denying Mr. Bundy's second jurisdictional motion. The Court will recall that motion was based in part on the Court's June 3 Order, where it held that Congress may administer "'federal lands any way it chooses.'" [#1155 at 5] Mr. Bundy argued:

> Extending that same logic, the Court must recognize that Congress expressly limited the government's power over federal land, when it authorized Mr. Bundy and "[a]ny individual, group, or corporation authorized to hold title to land … and who believes he has a valid claim under color of title" to attempt a claim for adverse possession against federally-owned land under the Color of Title Act. *See* 43 U.S.C. § 1068; 43 CFR 2541.1.

[Id.] In opposition, the government argued that Mr. Bundy's "adverse possession theory is fatally flawed because it does not apply to the federal government." [#1173 at 2] As Mr. Bundy showed, the only cases cited by the government in support, *United States v. Pappas*, 814 F.2d 1342 (9th Cir. 1987), *Wisconsin Valley Improvement Co. v. United States*, 569 F.3d 331 (7th Cir. 2009), and *United States v. Hato Rey Bldg. Co., Inc.*, 886 F.2d 448 (1st Cir. 1989), were entirely inapposite, involving the Quiet Title Act.[2] On Friday, September 9, 2016, the Court denied that

---

[2] *Pappas* concerned a boundary line dispute, where the government sued civilly to quiet title, without challenge to its right to own the land in question, and where adverse possession was not claimed by a private land owner and only mentioned in a one-sentence footnote. *Pappas*, 814 F.2d at 1345. *Wisconsin Valley Improvement* raised no issue concerning the legitimacy of federal ownership, and the sparse reference to "adverse possession" was in the entirely different context of a possible "easement," which the court did not decide. *Wisconsin Valley Imp. Co.*, 569 F.3d at 335. And *Hato Rey* contradicts the government's position here, recognizing that the government can be "stripped of its recorded title" by affirming "laws in effect … including those relating to adverse possession." 886 F.2d at 451.

motion, concluding that Mr. Bundy had failed to show how the Color of Title Act divested the Court of federal subject matter jurisdiction. [#1228 at 3] Significantly, the Court did so **based "[o]n [the] record" presented**. [Id. at 3-4]

Less than four hours later, the government filed its request for judicial notice, from which, with the assistance of Dr. Angus McIntosh and others over the weekend, Mr. Bundy has now been able to find the record of Congressional action that the Court found lacking in his second motion. Significantly, as Dr. McIntosh helps explain in the attached declaration, on June 29, 1936, Congress enacted legislation to divest federal jurisdiction over Parcels 1 and 2:

> That the **acquisition by the United States of any real property heretofore or hereafter acquired** for any resettlement project or any rural-rehabilitation project for resettlement purposes heretofore or hereafter constructed with funds allotted or transferred to the Resettlement Administration pursuant to the Emergency Relief Appropriation Act of 1935, or any other law, **shall not be held to deprive any State or political subdivision thereof of its civil and criminal jurisdiction in and over such property, or to impair the civil rights under the local law of the tenants or inhabitants on such property**; and insofar as any such jurisdiction has been taken away from any such State or subdivision, or any such rights have been impaired, jurisdiction over any such property is hereby ceded back to such State or subdivision.

49 Stat. 2035 (emphasis added); *see also* attached McIntosh Declaration, at ¶¶ 27-28, 33-38.

The government's declaration filed on Friday confirms the applicability of the 1936 Act, as it shows that the government acquired Parcel 1 in February 1935 (i.e., "heretofore"), and acquired Parcel 2 in November 1940 (i.e., "hereafter"). And this helps explain why the government and parties agreed in *United States v. Otley*, 127 F.2d 988, 993 (9th Cir. 1942), that "Oregon law controls" the question presented regarding the competing claims of ownership. *See also Adams v. United States*, 319 U.S. 312, 313 (1943) (construing 40 U.S.C. § 255, as applied to lands purchased by the federal government, to opine that the government lacked even partial or concurrent jurisdiction to enforce federal criminal laws unless and until it complied with the law providing for the same). Ultimately, *Otley* concluded that it was error for the district court to not

*Emergency Motion To Enjoin Prosecution, Dismiss With Prejudice, And Other Relief*                -4-

recognize the claims of adverse possession: "The district court erred in making no finding with regard to the character of the adverse possession, and the judgment must be reversed and the case remanded for further consideration as to these adverse claimants." *Otley*, 127 F.2d at 1001.

The information disclosed on Friday has further allowed Mr. Bundy and his counsel to confirm with research why the issues presented with this case, the Hammonds case, and the Refuge generally, have generated so much controversy. With this additional information, we can trace Congressional action through to 1946, where Congress expressly directed that property acquired under these particular federal programs, including structures such as those built by the CCC where the occupation occurred, be "liquidated" and disposed of long ago. *See* 60 Stat. 1062. Accordingly, the Court can now see that – not only was the attempt by Mr. Bundy and others to assert an adverse possession claim over property at the Refuge not prohibited by federal law – it was invited, as Congress had expressly directed that the property be liquidated, opening it up as it were, to new entry and other possessory claims. Indeed, one might say this case presents an instance of the **Executive Branch squatting on the Refuge land for decades, in defiance of Congressional action**. In light of this history, one can better appreciate both why the occupation was so emotional for residents of Harney County supporting Mr. Bundy's actions and why President Obama initially characterized it as "a local law enforcement matter."[3]

## I. The Significance Of New Information Challenging Ownership And Federal Jurisdiction

At this point, the Court may ask: what does this all mean? We expect the government will fall back on the almost circular position asserted previously: that notwithstanding the issues raised by Mr. Bundy regarding ownership of the Refuge, "[t]his Court has jurisdiction pursuant

---

[3] See Wolf & Berman, FBI Takes Lead On Investigating Armed Takeover, Wash. Post, Jan. 4, 2016, available at https://www.washingtonpost.com/news/post-nation/wp/2016/01/04/fbi-takes-lead-on-investigating-armed-takeover-of-federal-building-in-oregon/?utm_term=.9884d2cb1404.

to 18 U.S.C. § 3231 because this is a case involving federal criminal charges." [#1173 at 2] In denying Mr. Bundy's second jurisdictional motion, the Court seemed to take a similar view, pointing out that Mr. Bundy failed to "cite[] any authority that the Color of Title Act deprives the Court of subject-matter jurisdiction over a criminal matter in which a grand jury issued a Superseding Indictment… [And that] Act does not divest the district court of the United States of original jurisdiction over offenses against the laws of the United States under 18 U.S.C. § 3231 and this Court's jurisdiction under Article III, Section 2, of the United States Constitution." [#1228 at 3] In limited space remaining, Mr. Bundy will address at least four points in response.

### A. The Court Should Dismiss For Lack Of Subject Matter Jurisdiction.

First, Counts 1 and 2 of the indictment referenced by the Court assumes the legitimacy of the federal government's ownership of Refuge land, referring to Defendants' alleged conspiracy to prevent federal officers from "discharging the duties of **their office at the [Refuge]**," by among other things, "**refus[ing] to leave the [Refuge] and allow federal officials to return to their official duties**," and by possessing guns "**in a federal facility**." [#282 at 2-4] The government alleges that Mr. Bundy and the other defendants acted illegally in occupying the Refuge because they "had no business being on [the Refuge property] in the first instance." (7/18/2016 Hrg. 20:1-17) Thus, even applying the Court's September 9 Order, this new information helps show why ownership presents a subject matter jurisdiction issue. And, applying *Otley*, the answer to that question as it concerns Mr. Bundy's right to assert a claim for adverse possession at the Refuge will turn on Oregon law, 127 F.2d at 993, especially in light of Congress' action in 1936 waiving any application of federal jurisdiction on the issue. 49 Stat. 2035. At a minimum, the government has not carried its burden to prove federal subject matter jurisdiction in this matter. *United States v. Ali*, 266 F.3d 1242, 1243 (9th Cir. 2001).

Given this new information, it would be error to assume that any of the crimes here arise under the laws of the United States. "The district courts of the United States" have "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," 18 U.S.C. § 3231, which means "jurisdiction 'of all crimes and offenses cognizable under the authority of the United States.'" *Simons v. United States*, 119 F.2d 539, 544 (9th Cir. 1941). But the Supreme Court has long limited a district court's jurisdiction to particular land.

> Crimes are thus cognizable—'When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building'. Crim.Code, sec. 272, 18 U.S.C. s 451, Third, 18 U.S.C.A. s 451, subd. 3. The last clause covers cases where exclusive jurisdiction is acquired by the United States pursuant to Article 1, section 8, clause 17, of the Constitution, U.S.C.A.

*Bowen v. Johnston*, 306 U.S. 19, 22 (1939). Even then, "ownership" does not equate with "jurisdiction":

> There is no question that the United States had the constitutional power to acquire the [land in question] and that it did acquire it. Whether or not the National Government acquired exclusive jurisdiction over the lands … or [whether] the State reserved, as it could, jurisdiction over the crimes there committed, depended upon the terms of the consent or cession given by the legislature.

*Id.* at 23. The recent Second Circuit case *United States v. Davis*, 726 F.3d 357, 364 (2d Cir. 2013), shows why it is critical to resolve the issue of subject matter jurisdiction before subjecting Mr. Bundy to trial: "The upshot … is that the United States does not have jurisdiction over all lands owned by the federal government within the states," because "[i]n the absence of the state's consent or a cession of jurisdiction, and, since 1940, in the absence of an explicit acceptance of jurisdiction by the federal government, the federal government's possession is "simply that of an ordinary proprietor." *Davis* concluded that the district court had jurisdiction but sharply admonished it for not holding the government to its burden. *Davis*, 726 F.3d at 371. The Court

must not allow the government here to similarly give "short shrift" to jurisdiction.

### B. The Court Should Immediately Enjoin This Prosecution.

The Ninth Circuit recently handed down a ruling that encourages courts to enforce "federalism and separation-of-powers constraints in the Constitution … to protect individual liberty," where the government – and the executive in particular – "'acts in excess of its lawful powers.'" *McIntosh*, 2016 WL 4363168, at *6 (quoting *Bond v. United States*, 564 U.S. 211, 220-24 (2011)). "[A] court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation … [and] [w]hen Congress has enacted a legislative restriction …, federal criminal defendants may seek to enjoin" the executive branch's contravening actions. *Id*. at *5. In sum: specific Congressional action can raise significant issues of federalism or separation of powers, which must be enforced to protect a defendant's liberty.

Mr. Bundy has raised adverse possession, and the specific Congressional authorization underlying his rights, 43 U.S.C. § 1068. [#527, #892, #1065, #1115, #1178] To date, the government has essentially ignored the issue, sometimes with the "red herring" response questioning whether he could have ever been successful in perfecting title under §1068. But this new information now proves that Mr. Bundy was staking a perfectly legal *disseizen* and *ouster* of the government in January 2016. A person's legal conduct (to assert a claim for adverse possession and political speech) is not subject to criminal prosecution. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action … to penalize a person's reliance on his legal rights is patently unconstitutional."). Here, the government admits that the *disseizen* and *ouster* occurred, but it wants to put Mr. Bundy on trial for these legal actions. To allow such a prosecution would

violate longstanding rights whereby one party claiming "color of title" can hold, maintain, and exercise all rights pertaining to the possessed land until another with superior title challenges the same in court. *See Robinson v. Campbell*, 16 U.S. 212, 224 (1818) ("'[H]e that hath possession of lands, though it be by disseisin, hath a right against all men but against him that hath right.' *Doct. & Stud*. 9. 3 Shep. Abr. 26.  And the rule of the civil law is the same."); *Jasperson v. Scharnikow*, 150 F. 571, 572-73 (9th Cir. 1907) (explaining that "disseisin" is a recognized legal and "generally accepted doctrine" through which "another" person "becomes legally possessed of the lands"); *United States v. Florea*, 68 F. Supp. 367, 375 (D. Or. 1945) (such rights pass to "any possessor of the lands, including a wrongful taker, holder, or even disseisor").[4]

The government seeks to short-circuit this issue by now limiting any consideration of adverse possession to Mr. Bundy's state of mind defense. While we appreciate the Court's rulings allowing Mr. Bundy that much, this new information has allowed for us to now find and present additional Congressional authority showing why these questions of federal ownership must be resolved before he is subject to criminal prosecution. *Miranda v. City of Cornelius*, 429 F.3d 858, 866–67 (9th Cir. 2005) ("due process requires that a party affected by government action be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'"). In short, Congressional actions going back to 1936 have limited federal jurisdiction over the property at issue, vesting important rights of federalism and separation of powers in citizens like Mr. Bundy, who now stand up against the overreach of the executive branch. An injunction like that imposed in *McIntosh* is appropriate.

### C. If The Prosecution Proceeds, The Court Must Give Defendants Opportunity To Assert Their Constitutional Rights Before Standing Trial.

This new information concerning ownership raises additional issues under the Fourth and

---

[4] Mr. Bundy refers the Court to, and incorporates, prior briefing on these issues.

*Emergency Motion To Enjoin Prosecution, Dismiss With Prejudice, And Other Relief*                -9-

Fifth Amendments. As set forth above, Mr. Bundy and his colleagues acquired property rights by their actions. *Robinson*, 16 U.S. at 224 (adverse possession constitutes "sufficient title against every person" and legally entitles an adverse possessor to "stand upon his mere naked possession until a better title [was] shown" in a court of law). "[P]ossession, although it be merely a naked possession, or acquired by wrong, as by disseisin, is also a title" and continues "in the mean time, till some act be done by the rightful owner to devest the possession." *Id*. A seizure of property occurs, within the meaning of the Fourth Amendment, "when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1028 (9th Cir. 2012) ("[T]he constitutional standard is whether there was 'some meaningful interference' with Plaintiff's possessory interest in the property."). In *Levan*, the Ninth Circuit acknowledged that in addition to Fourth Amendment seizure protections, the Fifth Amendment due process clause protects "real estate, chattels, or money" and "beyond." *Id*.

Because the government did not take the appropriate civil action to "devest" Mr. Bundy's and others' asserted rights in the Refuge prior to seizing Mr. Bundy's property and/or destroying those acquired property rights by force, it did not comply with the Constitutional, and the Defendants must have the opportunity to present these issues to the Court before standing trial.[5]

> As we have repeatedly made clear, "[t]he government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008).

*Levan*, 693 F.3d at 1031-32 (showing that the government "completely misunderstands the role of due process" when it suggests it can take property prior to allowing due process). Even if the government genuinely believed that Mr. Bundy and the Citizens for Constitutional Freedom

---

[5] The government admits that it acted intentionally and tactically. (7/18/2016 Hrg. at 20:1-17)

*Emergency Motion To Enjoin Prosecution, Dismiss With Prejudice, And Other Relief*      -10-

were in wrongful possession and occupation of Refuge,[6] the Constitution still requires *prior formal notice* and compliance with reasonable *due process* before seizing, divesting or destroying that adversely possessed property interest. "The right to prior notice and a hearing is central to the Constitution's command of due process." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."). This applies to all "real property in general, not simply to residences." *Id*. at 61; *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) (government "may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement"). Here, the government never gave formal demand or notice and never obtained a warrant to seize the property interests held by Mr. Bundy and the Citizens for Constitutional Freedom. *See Soldal*, 506 U.S. at 66 ("[I]n the absence of consent or a warrant," such "seizures can be justified only if they meet the probably-cause standard, and if they are unaccompanied by [the government's] unlawful trespass."). As Defendant has previously argued, in the prior briefing referenced and incorporated herein, the established reasonable process for the government to challenge adverse possession – is civil ejectment or some other formal civil court process. The government's departure from these long-standing property law principles, when in dispossessing Mr. Bundy or seizing his property at the Refuge further compounds the impermissibility of the government's actions because it "creates an unacceptable risk of error." *James Daniel*, 510 U.S. at 55. In this case, that risk of error has resulted in the government's shooting death of one potential defendant, the pretrial incarceration of many others, and yet no

---

[6] The government (and the court) have made much of the "armed" nature of this occupation. But the Constitution recognizes the priority of an individual's rights to defend property and self. *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 69 n.6 (1992) (preventing defendant from "using reasonable force to protect" his property is "evidence" of the government's unlawful actions).

direct attention has resolved the ultimate property rights question.

### D. The Court Should Stay Proceedings Pending A Resolution Of These Issues.

Finally, the Court should stay trial pending a resolution of these important issues. As the Ninth Circuit held in *McIntosh*, this Court "cannot ignore the judgment of Congress, deliberately expressed in legislation" and "*federal criminal defendants may seek to enjoin*" a prosecution that contradicts that restriction. *McIntosh*, 2016 WL 4363168, at *5. T**his right to seek injunctive relief** must be resolved prior to trial. *Id.* at *2 (vacating and remanding trial court decision to submit the related factual questions to "the jury in a federal prosecution" promising to "revisit the defendants' motion [to dismiss or for injunctive relief enjoining prosecution] after the trial"). *McIntosh* held that the defendants were at least "entitled to evidentiary hearings to determine whether their conduct was" entitled to protection based upon Congressionally imposed limits to related executive discretion, prior to trial. *Id*. at *10. If the Court does not grant Mr. Bundy's motion, he should be accorded time to obtain review of the Ninth Circuit. 28 U.S.C. § 1292(a).

DATED:  September 12, 2016

>  */s/ Marcus R. Mumford*
>  Marcus R. Mumford
>  J. Morgan Philpot
>  Attorneys for Ammon Bundy