IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:16-cr-00051-BR |
| Plaintiff, | REDACTED JURY MANAGEMENT ORDER AND PROTECTIVE ORDER (#978) |
| v. | |
| AMMON BUNDY, JON RITZHEIMER, JOSEPH O'SHAUGHNESSY, RYAN PAYNE, RYAN BUNDY, BRIAN CAVALIER, SHAWNA COX, PETER SANTILLI, JASON PATRICK, DUANE LEO EHMER, DYLAN ANDERSON, SEAN ANDERSON, DAVID LEE FRY, JEFF WAYNE BANTA, SANDRA LYNN ANDERSON, KENNETH MEDENBACH, BLAINE COOPER, WESLEY KJAR, COREY LEQUIEU, NEIL WAMPLER, JASON CHARLES BLOMGREN, DARRYL WILLIAM THORN, GEOFFREY STANEK, TRAVIS COX, ERIC LEE FLORES, and JAKE RYAN, | <u>UNSEALED</u> |
| Defendants. | |

BROWN, Judge.

This matter comes before the Court *sua sponte* on jury-management issues related to the trial set to begin on September 7, 2016. As of the date of this Order, Defendants Ammon Bundy, Joseph O'Shaughnessy, Ryan Bundy, Shawna Cox, Peter Santilli, David Lee Fry, Jeff Wayne Banta, Kenneth Medenbach, and Neil Wampler will go to trial with *voir dire* starting on September 7, 2016.

## I.  Juror Anonymity and Protective Order

The empaneling of an anonymous jury "is warranted only where there is a strong reason to believe the jury needs protection or to safeguard the integrity of the justice system, so that the jury can perform its factfinding function." *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003). The Court "may empanel an anonymous jury 'where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, **or** to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused.'" *Id.* (quoting *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998))(emphasis added). Among the factors that may warrant protecting juror information from public disclosure is "extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation

and harassment.'" *Shryock*, 342 F.3d at 971.

The record in this case reflects there has been extensive publicity and commentary in traditional and social media of the 41-day "occupation" events that give rise to the charges on which Defendants will be tried beginning September 7, 2016, and of the proceedings in this matter. Such publicity and commentary reflect strong opposing views concerning Defendants' alleged conduct and the reasons Defendants may assert for protesting governmental action as well as the methods they may have chosen for doing so. *See* Order (#389) and Order (#884) Denying Motion for Change of Venue. The Court also notes there have been several occasions during the pendency of this case when (1) pro-Defendant demonstrators have congregated at the public entrance in front of the Courthouse where the trial will take place, often on days when court was in session on this matter and (2) telephone, email, social media, and U.S. Mail messages have been received by the Court protesting Defendants' prosecution and at times threatening presiding judicial officers and those involved in the court process.[1]

Based on 24 years of experience as a trial judge, this Court finds if jurors' names and personally-identifiable information are publicly disclosed, there is an unacceptable, continuous, and

---

[1] The Court does not have any information that suggests these communications have been directed by any Defendant or are otherwise attributable to any Defendant.

3 - REDACTED JURY MANAGEMENT ORDER AND PROTECTIVE ORDER (#978)

significant risk that jurors will be contacted or otherwise exposed to external information and influences about the case notwithstanding the Court's ongoing efforts to restrict their case exposure only to admissible evidence, the parties' arguments to the jury, and the Court's controlling instructions of law.

The Court, therefore, concludes it is necessary to enter a Protective Order in this case requiring partial juror anonymity to protect jurors from the possibility of contact by any media or members of the public. Based on *Shryock* the Court finds good cause to prohibit the public disclosure of the jurors' names and personally-identifiable information. The Court also concludes it is equally important to Defendants' fundamental rights to permit the parties, their counsel, and their paralegals and/or investigators to have access to the identities of the prospective jurors and the ultimate trial jurors subject to this Protective Order prohibiting disclosure of such information beyond the parties and their litigation teams (*i.e.*, the parties, counsel, licensed investigators, and paralegals).[2]

The Court, therefore, enters this Protective Order absolutely prohibiting the parties and members of their litigation teams from disclosing outside of such litigation teams the names and personally-identifying information of potential

---

[2] The Court notes the defendant-specific factors from *Shryock* do not apply in this case and, therefore, do not form the basis of the need for juror anonymity.

jurors and trial jurors. This Protective Order is in effect immediately and will remain in effect until further order of the Court. Although individual jurors may choose after trial to comment on the case publicly and, therefore, to forfeit their anonymity, the parties, nevertheless, remain prohibited from publicly disclosing the identity of any juror until further order of the Court. Any person who violates this Protective Order is subject to sanctions, including for contempt.

## II. Procedure for Review of Juror Questionnaires and In-Person *Voir Dire*

With the agreement of the parties the Court began the process of distributing Juror Questionnaires to the remaining pool of approximately 450 potential jurors on July 13, 2016, together with instructions to complete and to return their Questionnaires no later than August 5, 2016.

Early in the week of August 8, 2016, the Court will make available to the parties the completed Juror Questionnaires for the purpose of the parties' advance review and conferral regarding whether any potential jurors should be excused "for cause" from further participation in the jury-selection process. The Court directs the parties to hand-deliver to the Court a joint status report **no later than Noon, August 18, 2016,** in which the parties identify (1) the potential jurors the parties agree should be excused for cause and (2) the potential jurors that either the government or at least one Defendant believes should

be excused for cause but at least one other party objects to excusing, together with a concise explanation of the parties' positions as to each disputed challenge.

On the first day of the Pretrial Conference on August 22, 2016, the Court will consider the parties' recommendations and challenges regarding the potential jurors to excuse for cause based only on their Questionnaire responses. After the Court rules on the parties' requests to excuse certain prospective jurors for cause and pursuant to the parties' agreement, the Jury Administrator will randomly order the remaining jurors in the sequence they will be called to participate in live, in-court *voir dire* beginning on September 7, 2016, and, if seated, the order in which they will serve as trial jurors or alternate jurors.[3] In addition, at this stage of the Pretrial Conference the Court will discuss with the parties and, if sufficient information is then available, settle the number and distribution of peremptory challenges.

As soon thereafter as practical, the Court will provide the parties with a list of prospective jurors in the sequential order in which they will be seated for in-court *voir dire*. During the live *voir dire* process beginning September 7, 2016, the Court will ask questions of the prospective jurors with input from the

---

[3] The Court and the parties have agreed if an alternate juror must be seated as a trial juror, such alternate will be selected by lot from the available alternate jurors.

parties. The Court will address jurors by the number that corresponds to the sequential order in which they are seated for in-court *voir dire*. No one will address or identify any prospective juror by name, and, for the reasons already stated, the Court directs the parties to refer to prospective jurors during in-court *voir dire* by their juror seat number and not to disclose the name of any juror or prospective juror during court proceedings.

As the parties have agreed, the Court intends to seat 12 trial jurors and 8 alternate jurors. As a result, *voir dire* will continue day-to-day until enough jurors are passed for cause to allow the seating of 20 jurors after peremptory challenges have been exercised.

On September 7, 2016, the Court will call 30 prospective jurors for in-court *voir dire*. On each subsequent day the Court intends to call 30 prospective jurors for each of two separate in-court *voir dire* sessions in the morning and in the afternoon. The Court directs the parties to provide the Clerk (no later than Noon on the day before a specific group of prospective jurors is scheduled for *voir dire*) a single, joint document with the juror-specific questions that the parties request the Court to ask during in-court *voir dire* (*e.g.*, questions for prospective jurors on the first day of *voir dire* are due no later than Noon on September 6, 2016, and questions for jurors on the second day of

*voir dire* are due by Noon on September 7, 2016).

### III. Partial Jury Sequestration

The decision to sequester a jury is within the discretion of the trial court. *United States v. Dufur*, 648 F.2d 512, 513 (9th Cir. 1980). *See also United States v. Cabaccang*, No. 97-00095, 2010 WL 3000196, at *14 (D. Guam July 28, 2010). Partial jury sequestration implicates many of the same concerns as juror anonymity, and, therefore, the court considers the same factors when determining whether to partially sequester the jury. *See DeLuca*, 137 F.3d at 31 n.4 (partial sequestration and juror anonymity "implicate essentially similar constitutional concerns.").

For the reasons already specified, this Court concludes it is necessary to require a partial sequestration of the 12 trial jurors and 8 alternate jurors **[REDACTED]**. As noted, there have been periodic gatherings of nonparties interested in the case outside of the public entrance to the Courthouse through which jurors would normally enter and leave. Although these demonstrations to date have been without incident, they, nonetheless, present the potential to influence jurors with information external to the trial and to impair jurors' ability to be impartial and to decide the case solely on the evidence presented in court and on the Court's instructions as to the law. Moreover, because some threats have been made against judicial

officers presiding over these proceedings, it is necessary to protect jurors from the risk of similar inappropriate conduct.

Accordingly, on this record the Court concludes a partial sequestration of the jury is necessary as specified herein to protect jurors from external influences that could impair their ability to be impartial and to ensure jurors' security throughout their service.

IT IS SO ORDERED.

DATED this 3rd day of August, 2016.

/s/ Anna J. Brown
---
ANNA J. BROWN
United States District Judge