Michael E. Rose, OSB#753221
E-mail: mrose@civilrightspdx.com
CREIGHTON & ROSE, P.C.
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
Phone: (503) 221-1792
Fax: (503) 223-1516
Of Attorneys for Gary Hunt

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

## Portland Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | 3:16-cr-00051-BR |
| v. | **MEMORANDUM OF LAW: REPLY** |
| **AMMON BUNDY, et al.,** | |
| **Defendants.** | |
| **GARY HUNT,** | |
| **Respondent**. | |

## CERTIFICATE OF COMPLIANCE

This Memorandum of Law complies with the applicable word-count limitation under LR 7-2(b) because it contains 2250 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

PAGE 1 – MEMORANDUM OF LAW: REPLY

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

## INTRODUCTION

There are two truths underlying the analysis of this case. The first is that the court has the undoubted power and authority to enforce its judgments and orders. The second is that the exercise of that power and authority is constrained by the Fifth Amendment due process clause. *See, e.g.*, *Red 1 Invs., Inc. v. Amphion Int'l Inc.*, 2007 U.S. Dist. LEXIS 85675, *8 (E.D.Wash. 2007). As a general matter, neither of those propositions should be at all troubling.

In this case, respondent Hunt does not dispute the authority of the court to issue protective orders or to seek to enforce compliance with such orders order by way of contempt proceedings. His dispute, rather, is whether the court had the jurisdiction over his person to issue such an order directed to him in this case and to enforce such order.

## DISCUSSION

While it may have been discussed previously in a rule-oriented context, the limitation on the court's personal jurisdiction is not based in particular on the federal rules of civil or criminal procedure or any statutory provision but on one of the core concepts embedded in the due process clause, namely, the extent to which a court – any court – can exercise its personal jurisdiction over an individual. The first prerequisite of due process is that the individual must maintain or have had a certain minimum level of contact with the forum jurisdiction. *See*, *e.g.*, *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565, 5 Otto 714 (1878); *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

To briefly recapitulate, for an individual to be subject to general *in personam* jurisdiction, the person "must have such continuous and systematic contacts with the forum that the exercise

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995), *citing Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993); *see Lake v. Lake*, 817 F.2d 1416, 1420-21 (9th Cir. 1987). Absent such continuous and systematic contacts, a three-part test has been applied to determine whether the defendant has sufficient connection with the forum to sustain personal jurisdiction as a due process matter.

> "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable."

*Lake*, 817 F2d at 421; *reiterated in Core-Vent*, 11 F.3d at 1485; *Reebok*, 49 F.3d at 1391. The first two parts of the test determine whether there are sufficient "minimum contacts" between the individual and the forum jurisdiction; the third considers whether jurisdiction in the particular case is, nonetheless, consistent with the fundamental fairness guarantee of the due process clause.

In the narrower case of jurisdiction regarding alleged contempt for violation of a court's order by a nonparty who resides outside the territorial jurisdiction of a district court, minimum contacts sufficient to subject the person to that court's jurisdiction may also be found if, with actual notice of the court's order, the person actively aids and abets a party in violating the order. *Id.* As to the fairness component of the due process analysis, "[h]aling a person into court only upon finding that the nonparty has aided in knowingly violating an injunction fulfills traditional notions of fair play and substantial justice because it is foreseeable that the person would be

CREIGHTON & ROSE, PC ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

required to respond in that forum." *Red 1*, 2007 U.S. Dist. LEXIS 85675, *10-11, *citing Waffenschmidt*, 763 F.2d at 721.

The government has submitted, in response to Mr. Hunt's objection to jurisdiction, two decisions rendered by Judge Panner in the case of *In re Alpha Telecom, Inc.*, CV 01-1283-PA, issuing, in chronological order, a Temporary Restraining Order, on 18 December, 2008, and an Order finding Ernest Bustos, *et al.*, in Contempt, on 1 July, 2009 (Dkt. 2079-1). These two decisions are later entries in the docket of an ongoing case, the history of which provides some needed context for the submission.

In 2001, the SEC filed suit against Alpha Telecom, of Medford, OR, and its president/owner Rubera, for running what the court described as a Ponzi-like scheme for sales and service of pay telephones. The scheme involved getting people to invest in Alpha, and guaranteeing a 14% return on investment. Ernesto Bustos was a paid promoter of the scheme. The court found that the "investment opportunity" offered by Alpha Telcom was a "security" for purposes of the Securities Act of 1933 ("the Act") and that Alpha Telcom had violated § 5 of the Act by failing to register the securities with the SEC prior to selling them in interstate commerce. As a result, Alpha and its owner were enjoined from any further solicitations or sales and were ordered to repay its understandably unhappy investors in the amount of some $3,750,707.66, a Receiver being appointed to facilitate that process. *SEC v. Alpha Telcom, Inc.*, 187 F. Supp. 2d 1250, 1258 (D. Or. 2002), *affirmed sub nom. SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003).

On December 23, 2003, approximately two weeks after the court decided *Rubera*, the Receiver filed a motion to disgorge some $21 million in commissions on the sales of these unregistered securities from Alpha Telcom's sales agents, including Bustos, none of whom had

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

been a party to the previous round of litigation. The agents, including Bustos, sought intervention and argued, *inter alia*, that the district court did not have personal jurisdiction over them. In response to their argument, Judge Panner made what amounted to findings of fact that there were sufficient "minimum contacts" between Bustos and the forum to warrant the exercise of the District Court's personal jurisdiction:

> The claims by the Receiver and the SEC (hereafter, "Plaintiffs") are ancillary to the Receivership this court is administering. This court necessarily has jurisdiction over matters pertaining to that Receivership, and the assets thereof. The Bankruptcy case also is situated in Oregon. In addition, Alpha Telcom was based in Oregon, the agent's sales contracts were with a company headquartered in Oregon and contemplated an ongoing relationship, and the contracts specified that Oregon law would govern any dispute. Finally, I note that nationwide service is authorized in most securities law cases. *See* 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa.

*In re Alpha Telcom, Inc.*, CV 01-1283-PA, 2004 U.S. Dist. LEXIS 20002, *12-13. (D.Or. 2004). Judge Panner further held that service on the defendant agents was sufficient, even if, perhaps, formally wanting. *Id*. at *13-16. Having found personal jurisdiction, the Receiver's motion for disgorgement was granted on the merits. *Id*.

On appeal, the Ninth Circuit held that the district court lacked personal jurisdiction to enter the disgorgement order against Bustos. The court engaged in a lengthy discussion of the requirements for personal jurisdiction in cases such as this, *SEC v. Ross*, 504 F.3d 1130, 1138-9 (9th Cir. 2007), but, without any particular discussion of the question of minimum contacts in the instant case, concluded that Bustos had not been properly served, so "the district court's power over him remained nothing more than a potentiality." *Id*. at 1140. The court therefore vacated the disgorgement order and remanded. *Id*. at 1151.

Shortly thereafter, and pertinent to the government's submission, Bustos re-emerged, this

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

time as the president of the "Payphone Owners Legal Fund Inc." ("POLFI"), whose ostensible purpose was to recoup the money for the defrauded Alpha Telecom investors. Of course, they had to pay Bustos a sum of money up front for his efforts. It appears that Bustos had, among other things, used the records of the Oregon court proceedings to identify victims of the Ponzi scheme for him to target, and may have been interfering with the attempts of the court appointed Receiver to get the investors' money back. Judge Panner included a lengthy list of allegations in his issuance of the TRO (Dkt. 2079-1, at 11-13), which ordered Bustos and POLFI to cease and desist and to produce documents. Bustos did not cooperate quietly, or at all, and the contempt proceeding ensued.

The only jurisdictional discussion in either of Judge Panner's opinions that were submitted was some general authority about the importance of the court's inherent power to "protect the integrity of its proceedings." Dkt 2079-1, at 13-14. There was no discussion at all about personal jurisdiction.

On appeal, the Ninth Circuit, in an unpublished opinion, affirmed the order of the district court holding that the district court did not abuse its discretion by holding Bustos in contempt. The only mention of personal jurisdiction was significant. Consistently with Judge Panner's decision, the court concluded:

> [T]he district court had jurisdiction to issue the Order to Show Cause. Bustos brought himself within the district court's jurisdiction *by committing seven purposeful acts in the forum that gave rise to this action*.

*SEC v. Rubera*, 412 Fed. Appx. 980, 2011 U.S. App. LEXIS 1845 (9th Cir. 2011)(emphasis added). The clear implication is that "minimum contacts" analysis is indeed a part of the *in personam* jurisdictional calculus even in contempt cases.

CREIGHTON & ROSE, PC ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

The other cases cited by the government are not to the contrary. Again, the fundamental issue is whether the actions of the individual that are alleged to be contemptuous bear a sufficient connection with the forum to satisfy the due process minimum contacts requirement. Judge Panner proceeded on that assumption, even if he may not have squarely held as much in *Alpha Telecom*, 2004 U.S. Dist. LEXIS 20002, *12-13. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), relied upon by the government – and the Ninth Circuit – in fact held that this was the case, and "that nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction *if*, with actual notice of the court's order, *they actively aid and abet a party in violating that order*." *Red 1,* 2007 U.S. Dist. LEXIS 85675 at *8 (emphasis added). In *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387 (9th Cir. 1995), which had been previously cited by the government, the Ninth Circuit, at least as a matter of *dictum*, expressed its approval of the reasoning in *Waffenschmidt*. The other cases cited by the government are entirely consistent, and, for that, entirely unremarkable.

It is important to keep in mind what those cases do not say. They don't say that the court has the unbridled authority to order anyone anywhere to abide by any court order under pain of contempt. They do confirm that due process requires, at very least, a certain "minimum contact" with the forum as well as adequate notice.

This returns us to the underlying question of whether there are sufficient "minimum contacts" between Mr. Hunt and this forum to support the court's jurisdiction to have directed the Supplemental Protective Order at him, in the first instance, or to have Ordered him to Show Cause why he should not be held in contempt for its violation.

As was previously discussed in respondent's Memorandum, and the supporting

PAGE 7 – MEMORANDUM OF LAW: REPLY

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

Declaration (Dkt. 2077), Mr. Hunt's activities do not rise to the level of the minimum contacts necessary to support jurisdiction. His writings and publication all took place in California, where he has, at all relevant times, resided. *Id*. The digital publication of his writings was intended for a broad, national readership and was not particularly directed at the forum state. *See Wright v. Yackley*, 459 F.2d 287, 290 (9th Cir. 1972) (acts that are sufficient to establish minimum contacts are those "performed by a nonresident *for the very purpose of having their consequences felt in the forum state*." (emphasis added). Mr. Hunt's web postings were insufficient to establish the requisite level of contact, since "a mere web presence is insufficient to establish personal jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010); *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (explaining that a passive website that "does little more than make information available to those who are interested in it" does not support specific jurisdiction over operators).

As has been noted, the courts have also concluded that minimum contacts may be established by showing that the individual with actual notice of the order actively "aided and abetted" a party in violating the order. *See Reebok*, *supra, citing Waffenschmidt*; *Red 1*, *supra*, at *8. There is no admissible evidence in the record that Mr. Hunt obtained any information from anyone who was bound by the terms of the protective order, and there is nothing to suggest that he aided or abetted anything or anyone else in any other relevant regard.[1]

///

///

---

[1] The Facebook postings of Mr. Ehmer are inadequate to prove, let alone demonstrate, that Mr. Hunt was aiding or abetting the violation of the protective order or that he was subject to the protective order in the first instance.

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com

## CONCLUSION

For all of the foregoing reasons, this court should determine that it has no jurisdiction over either or both of the person of Mr. Hunt or the subject matter of this proceeding and dismiss the within proceeding.

Respectfully submitted 8 May, 2017

/s/ *Michael E. Rose*
Michael E. Rose, OSB #753221
Of Attorneys for Gary Hunt

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill St. #500
Portland, OR 97204-3316
T. (503) 221-1792
F. (503) 223-1516
mrose@civilrightspdx.com